**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **NOEL BAILEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.: CBD-15-1731** |
| | * | |
| | * | |
| **WASHINGTON METROPOLITAN** | * | |
| **AREA TRANSIT AUTHORITY, et al.** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

*****

## MEMORANDUM OPINION

Before this Court are Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion for Summary Judgment, (ECF No. 24) ("WMATA's Motion") and Defendant Prince George's County, Maryland's ("Prince George's County") Motion for Summary Judgment (ECF No. 26) ("Prince George's County's Motion"). The Court has reviewed WMATA's Motion, Prince George's County's Motion, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court **GRANTS** WMATA's Motion and **DENIES** Prince George's County's Motion.

### I.     Factual Background

Noel G. Bailey ("Plaintiff") alleges that at approximately 6:45 a.m. on January 22, 2014, he slipped and fell on a snow-covered sidewalk along Ellin Road outside the New Carrollton Metro Station. Amend. Compl. 2. As a result of the fall, Plaintiff alleges he suffered a very serious injury to his left ankle. *Id.* Plaintiff alleges that as the owner of the sidewalk, Prince George's County had a duty to maintain the sidewalk along Ellin Road free from ice and snow.

1

*Id.*  Plaintiff further alleges that Prince George's County breached the duty of reasonable care, and therefore, was negligent, when it failed to clear the sidewalk or post warning signs after the snowstorm the night before.  *Id.* at 2-3.

In addition, Plaintiff asserts that WMATA had a duty to safely maintain the sidewalk along Ellin Road, outside the New Carrollton Metro Station, free from snow and ice.  *Id.* at 3. Plaintiff claims that WMATA breached the duty of reasonable care and acted negligently when it failed to clear the sidewalk or warn Plaintiff of the dangerous and unsafe conditions.  *Id.* at 4.

## II.     Standard of Review

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is deemed genuine only if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is deemed material only if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Supreme Court has explained that the burden of proof lies with the movant to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A court reviewing a motion for summary judgment must view the evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.   Analysis

### A.   Prince George's County owed Plaintiff a duty of care and whether Prince George's County had either actual or constructive notice of the dangerous conditions on January 22, 2014 is a jury issue.

Prince George's County argues it does not owe Plaintiff a duty of care because even if it owns the sidewalk, it is not responsible for removing snow and ice from any sidewalk, and instead WMATA is solely responsible for the snow and ice removal.  Prince George's County's Mot. 4.  Prince George's County further contends that even if it owed a duty to Plaintiff, it did not breach it because Plaintiff walked on the snow covered sidewalk shortly after a significant snowfall, and in such a short amount of time, the County could not have the opportunity to remove the snow from all its sidewalks.  *Id*. at 5.

In response, Plaintiff argues that Prince George's County had notice, since January 20, 2014, of the impending snow storm, and even prepared a snow plan.  Pl.'s Opp. 12.  Therefore, Prince George's County had ample opportunity to prepare and then clear the snow and ice before Plaintiff's fall.  *Id*.  In its reply, Prince George's County contends that Plaintiff failed to establish that the County had notice of ice on the sidewalk where he fell because he did not see anyone falling and he walked for fifteen minutes without falling.  Prince George's County's Reply 2-3.

In a negligence claim, the plaintiff must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty."  *Moore v. Jimel, Inc.*, 147 Md. App. 336, 337-38 (Md. Ct. Spec. App. 2002) (citing *Valentine v. On Target*, 353 Md. 544, 549 (1999)).  A municipality owes a duty to persons lawfully using the sidewalk under its control to make such sidewalk reasonably safe for passage.  *See Weisner v. Mayor and Council of Rockville*, 245 Md. 225, 228 (1967).  In

order to hold a county liable for injuries caused by its alleged negligence in failing to keep sidewalks under its control free of dangerous conditions, the plaintiff must show that the county had either actual or constructive notice of such condition. *Id.* As the owner of the sidewalk, Prince George's County owed a duty to Plaintiff to make the sidewalk he was using reasonably safe for passage. Prince George's County has not cited any authority supporting the proposition that it did not have a duty to remove snow and ice from a sidewalk it owns. Furthermore, Plaintiff has presented evidence from which a reasonable juror could conclude that Prince George's County had actual or constructive notice of the hazard caused by the accumulation of snow and/or ice. According to Adam M. Jiroun, Prince George's County designee, and Division Chief for Road Maintenance and Construction Division, Prince George's County prepared a snow plan to deal with the snow storm that began on January 21, 2014. *See* Adam M. Jiroun Dep. ECF No. 31-2, p. 37:13-22. The Court concludes that it is for a jury to decide whether Prince George's County had actual or constructive notice of the hazard after the snow storm.

**B.   The Court cannot conclude that Plaintiff assumed the risk as a matter of law.**

Prince George's County argues that Plaintiff assumed the risk of falling on the snow and relies on *ADM P'ship v. Martin*, 348 Md. 84 (1997), *Schroyer v. McNeal*, 323 Md. 275 (1991) and *Morgan State Univ. v. Walker*, 397 Md. 509 (2007). Prince George's County Mot. 5-8. Prince George's County contends that the evidence in the case shows that Plaintiff fully knew and understood the danger, and voluntarily chose to walk on the snow covered sidewalk. *Id.* at 7-8. Additionally, Prince George's County asserts that there is no evidence that Plaintiff was forced against his will to walk on the snow covered sidewalk. *Id.* at 8.

Plaintiff argues that the actual knowledge and voluntariness elements of the assumption of risk defense are missing in this case. *Id.* at 18. Specifically, Plaintiff contends that he could not have assumed the risk because he did not feel or see the ice before he slipped on it. *Id.* at 18.

4

In support of this position, Plaintiff cites *Poole v. Coakley E. Williams Const., Inc.*, 423 Md. 91 (2011) which requires Plaintiff to "actually" know about the risk.  Additionally, Plaintiff argues that his conduct that morning was involuntary because he had no choice but to go to work the morning of January 22, 2014 since he was a recently hired "essential employee," who was on a six (6) month period of probation, and who could be terminated for any reason, including attendance.  *Id*. at 19.  Plaintiff therefore argues that the jury should decide whether he had actual knowledge of the ice under the snow-covered sidewalk, and whether he voluntarily assumed the risk.  *Id*. at 20.

In Maryland, assumption of risk is a bar to recovery.  *Prudential Securities Inc. v. E-Net, Inc.*, 140 Md. App. 194, 226 (Md. Ct. Spec. App. 2001).  The defendant must prove three elements to establish the defense of assumption of the risk: (1) the plaintiff had knowledge of the risk of the danger; (2) the plaintiff appreciated that risk; and (3) the plaintiff voluntarily confronted the risk of danger.  *Thomas v. Panco Mgmt. of Maryland*, *LLC*, 423 Md. 387, 395 (2011) (citing *ADM P'ship v. Martin*, 348 Md. 84, 90-91 (1997)).

To determine whether a plaintiff had knowledge of the risk, the Court applies a subjective standard focused on what that particular plaintiff saw, knew, understood, and appreciated, which is different from the objective standard that is applied to contributory negligence.  *Poole*, 423 Md. at 112 (citing *Prosser and Keeton* § 68 at 487; *American Law of Torts* § 12:53, at 431-33). Therefore, "in order for a plaintiff to have assumed the risk of his or her injuries as a matter of law . . . [that] plaintiff 'must' have known that the risk was 'actually present,' not that he or she 'would,' 'should,' or 'could' have known that the risk 'might well be present.'"  *Id*. at 123. However, an objective element enters the case because the plaintiff "will not be heard to say that he did not comprehend a risk which must have been quiet clear and obvious to him."  *Id*. at 113 (quoting *Prosser and Keeton* § 68, at 487-88).  In other words, the Court will not be "swayed by

a plaintiff's subjective denial that he or she did not comprehend the extent of a clearly obvious

danger." *Crews v. Hollenbach*, 358 Md. 627, 644 (2000).  There are "certain risks which anyone

of adult age must be taken to appreciate" and therefore, a plaintiff's denial of his knowledge of

such risk will be insufficient.  *Poole*, 423 Md. at 116.

"The question of whether the plaintiff had knowledge and appreciation of the particular

risk at issue is ordinarily a question for the jury, 'unless the undisputed evidence and all

permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and

*understood* by the plaintiff.'"  *Thomas*, 423 Md. at 395 (quoting *Schroyer v. McNeal*, 323 Md.

275, 283 (1991)) (emphasis in original).  "Where it is clear, however, 'that a person of normal

intelligence in the position of the plaintiff *must* have understood the danger, the issue is for the

court.'"  *Id*. (emphasis in original).  "[F]or a court to impute knowledge as a matter of law, the

evidence and all permissible inferences must make clear that the plaintiff had full, actual, and

subjective knowledge of the risk or that 'a person of normal intelligence in the position of the

plaintiff *must* have understood the danger.'"  *Poole*, 423 Md. at 125.

To determine "whether a plaintiff . . . voluntarily exposed [himself] . . . to the risk of a

known danger, 'there must be some manifestation of consent to relieve the defendant of the

obligation of reasonable conduct.'"  *ADM P'ship v*, 348 Md. 84 at 92 (quoting *Prosser and

Keeton* § 68 at 490).  For a plaintiff  "to assume voluntarily a risk of danger, there must exist 'the

willingness of the plaintiff to take an informed chance.'"  *Id*. (quoting *Schroyer*, 323 Md. at 283).

In other words, "there can be no restriction on the plaintiff's freedom of choice either by the

existing circumstances or by coercion emanating from the defendant."  *Id*.  That is, "[w]here the

defendant puts him to a choice of evils, there is a species of duress, which destroys the idea of

freedom of election."  *Id*. at 93 (quoting *Prosser and Keeton* § § 68 at 490–91).  However, where

a plaintiff "is driven by his own necessities to accept a danger, the situation is not to be charged against the defendant." *Id.*

In this case, there is a dispute of material fact as to whether Plaintiff fell on the ice or snow.  In his deposition, Plaintiff claims that he fell on the snow.  *See* Noel G. Bailey Dep., ECF No. 24-1, p. 37:8-10, 19-20.  Plaintiff also claims that he slipped on the ice under the snow.  *Id.*, ECF No. 31-2, p. 52:2-3.  Whether Plaintiff fell on the ice or the snow is material.  The snow was visible and there is sufficient evidence to conclude that Plaintiff knew the risk of falling on the snow.  On the day of the incident, Plaintiff left his house earlier than usual to catch the bus because it was snowing and he did not want to rush.  *See* Noel G. Bailey Dep., ECF No. 24-1, 19:21, 20:1-2.  Plaintiff knew that the night before the incident, it had snowed significantly: "a blizzard . . . like 22 inches." *Id.* at 26:12-13.  Plaintiff was at least certain that "there was more than 15 inches of snow on the ground." *Id.* at 27:11-12.  Plaintiff also acknowledged that there was "so much snow" that on his way to the bus stop he alternated between walking on the street and on the sidewalk. *Id.* at 49:20-22.  On the day of the incident, Plaintiff wore snow boots as he made his way to the bus stop. *Id.* at 29:3.  The area where Plaintiff fell was "heavily covered in snow." *Id.* at 32:8-9.  However, there is insufficient evidence before the Court to conclude that Plaintiff had actual knowledge that there was ice under the snow.  Therefore, the Court cannot conclude that Plaintiff knew the risk of slipping and falling on ice.

Even if the Court concluded that Plaintiff knew and appreciated the risk of slipping and falling on the snow and/or ice, the Court cannot rule as a matter of law that Plaintiff assumed the risk because the Court cannot conclude that Plaintiff voluntarily confronted the risk of slipping and falling on snow and/or ice.  This case is different from *ADM P'ship v. Martin*, 348 Md. 84 (1997) and *Burke v. Williams*, 244 Md. 154 (1996).  In *ADM P'ship*, the plaintiff, employed as a delivery person for a reproduction company, fell on an icy walkway as she delivered blueprints

to a business owned by the defendants. *ADM P'ship*, 348 Md. at 88.  The plaintiff testified that although her employer never communicated she could lose her job if she did not make the delivery, she believed that she had no choice but to deliver the blueprints. *Id*. at 89.  The court held that the plaintiff assumed the risk of her own injuries. *Id*. at 97.  As to the voluntariness element, the court concluded that neither the plaintiff's employer nor the defendant "ever demanded" that Plaintiff walk over the ice and snow covered walkway against her will. *Id*. at 99. The court also noted that there was no evidence to suggest that the plaintiff's employment would have been adversely affected if she did not make the deliveries. *Id*. at 98.

In *Burke*, the plaintiff slipped and fell into an excavation at a construction site as he was delivering kitchen sink tops, and carrying them over a walkway made by fastening two ten or twelve foot boards at both ends. *Burke*, 244 Md. at 156-57.  At trial, the plaintiff testified that the boards were slippery due to mud and slush from melting snow. *Id*. at 157.  The plaintiff argued that he did not assume the risk voluntarily, in part because of the economic necessity of keeping his job and not being discharged for failure to deliver the sink tops. *Id*. at 158.  The court rejected this argument, concluded that the plaintiff assumed the risk, and reasoned that there was no evidence that the plaintiff's job "would have been in jeopardy had he left the sink tops on the construction site instead of taking them into the house." *Id*.

In contrast to *ADM P'ship* and *Burke*, there is evidence before this Court to conclude that Plaintiff's employment could have been adversely affected if he had decided not to go to work because of the snowstorm.  According to Melissa Amick, the Assistant Director of Financial Services for the Department of Residential Facilities at the University of Maryland, College Park, on January 13, 2014, Plaintiff was hired by the University of Maryland as a full-time housekeeper, and was an "essential employee" who was required to come to work as usual on January 22, 2014.  *See* Affidavit of Melissa Amick, ECF No. 24, p. 1.  According to Ms. Amick,

Plaintiff was on probation for six (6) months from the date of hire and subject to being fired for any reason.  *Id*. at 2.  Plaintiff's employer was going to consider his attendance record when determining whether to extend his employment after the probation period.  Unlike in *ADM P'ship* and *Burke*, Plaintiff did not have a purely "subjective belief" that his refusal to assume the risk would result in negative employment consequences.  There is evidence from which a jury could find that as an essential employee, Plaintiff was expected to be at work on a snow day.

This case is also unlike other cases where the Court of Appeals of Maryland and the Court of Special Appeals of Maryland have concluded that the plaintiffs assumed the risk when they slipped and fell on ice or snow by not taking advantage of other alternatives.  *See, e.g.*, *Warsham v. James Muscatello, Inc.*, 189 Md. App. 620, 653 (2009) (where the court held that the plaintiff assumed the risk of falling as he was salting an icy area because he had other alternatives such as throwing salt on the ice from the safety of the grass, contacting maintenance employees, posting a sign, blocking access to the icy area, etc); *Walker*, 397 Md. at 520 (2007) (where the court held that the plaintiff assumed the risk of falling on ice in a school parking lot because she had other alternatives, such as arranging a different plan to deliver the money to her daughter, "instead of voluntarily proceeding in the face of danger"); *Schroyer*, 323 Md. at 288 (1991) (where the court held that the plaintiff assumed the risk of falling after she voluntarily chose to traverse an ice and snow covered parking lot and sidewalk for the convenience of unloading her belongings).  In this case, a reasonable jury could find that unlike in *Warsham*, *Walker*, and *Schroyer*, Plaintiff did not have an option, as an essential employee, but to walk to the bus stop on snow covered sidewalks and streets, to get on the bus that would take him to work.  Accordingly, the Court cannot conclude that Plaintiff assumed the risk as a matter of law.

**C. WMATA's decision to remove snow and/or ice is discretionary and therefore it is entitled to immunity protection.**

WMATA relies on *Tinsley v. WMATA*, 429 Md. 217 (2012)*, and argues that it enjoys immunity from lawsuits challenging the manner in which it carries out discretionary maintenance functions such as removing snow after a blizzard.  WMATA's Mot. 7-12.  In response, Plaintiff argues, relying on Md. Transp. Code. Ann. § 10-204(80) and *Higgins v. City of Rockville*, 86 Md. App. 670 (1991), that under Maryland law, maintenance of the condition of sidewalks is a proprietary function for which immunity is not available.  Pl.'s Opp. 20-23.  In its reply, WMATA contends that whether an activity is governmental or proprietary is a matter of federal law because the WMATA Compact is an act of Congress.  WMATA's Reply 1.  WMATA further suggests that *Smith v. WMATA*, 290 F.3d 201 (4th Cir. 2002) is controlling authority which held that WMATA's operational and maintenance decisions are entitled to immunity.  *Id.* at 2-3.

WMATA is a mass transit system that was created in 1966 by an interstate compact ("the Compact"), enacted and consented to by Congress, and adopted by the state of Maryland, the District of Columbia, and the Commonwealth of Virginia.  *See Tinsley*, 429 Md. at 222-23.  The Compact provides that WMATA is an interstate agency and instrumentality of each of the signatories to the Compact.  *Delon Hampton & Assocs. v. WMATA*, 943 F.2d 355, 359 (4th Cir. 1991).  Questions regarding the interpretation of the Compact are questions of federal law.[1] *Tinsley*, 429 Md. at 223 (citing *Cuyler v. Adams*, 449 U.S. 433, 438 (1981)).

WMATA enjoys the same rights and privileges as a state, including sovereign immunity. *Delon Hampton & Assocs.*, 943 F.2d at 359.  WMATA's immunity, however, is not all

---

[1] The Court agrees with WMATA's contention that it is incorrect for Plaintiff to argue that WMATA's claim of immunity is controlled by Maryland law.  *See* WMATA's Reply 1.

encompassing since it is waived for torts committed in the exercise of its proprietary functions, but not for the commission of any torts resulting from its governmental function.[2] *Tinsley*, 429 Md. at 224. To determine whether a function is proprietary or governmental, there is a two-part approach. First, the Court looks at whether WMATA was engaged in a quintessential governmental function. *Smith v. WMATA*, 290 F.3d 201, 207 (4th Cir. 2002). If it is such a function, it is within WMATA's sovereign immunity. *Id.* If WMATA was not engaged in a quintessential government function, the Court must determine "whether the challenged activity is discretionary or ministerial." *Id.* If the activity is discretionary, it is within WMATA's sovereign immunity. *Id.* If the activity is ministerial, it does not fall within WMATA's sovereign immunity. *Id.* at 208.

To determine whether WMATA's decision was discretionary, the Court inquires first, whether "any statute, regulation, or policy 'specifically prescribes a course of action for an employee to follow.'" *Pierce v. WMATA*, DKC 09–1917, 2010 WL 4485826, at *4 (D. Md. Nov. 9, 2010) (citing *Kiska Const. Corp. v. WMATA*, 321 F.3d 1151, 1159 (D.C. 2003)). If the course is prescribed, the activity is not discretionary. *Id.* Second, the Court must determine "whether the exercise of discretion is grounded in 'social, economic, or political goals.'" *Id.* If it is, sovereign immunity applies. *Id.*

WMATA's snow and/or ice removal is not a quintessential government function such as police activity, prosecutorial decisions, or firefighting. *Pierce*, 2010 WL 4485826, at *4

---

[2] Section 80 of the Compact provides:

The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees, and agents committed in the conduct of any proprietary function, in accordance with the applicable signatory (including rules of conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority.

Md. Code Ann., Transp. § 10–204(80).

(citations omitted).  Accordingly, the Court must determine whether WMATA's snow and/or ice removal decision is a discretionary or ministerial activity.  There is no evidence before the Court indicating that a particular statute, regulation, or policy specifically prescribed how WMATA employees were to remove the snow and/or ice.  However, WMATA's snow and/or ice removal decisions are based on economic and policy goals, and therefore are immune from suit.  *See Tinsley*, 429 Md. at 239-40 (where the Court determined that WMATA's decision to clean the station floor, and to allow water to evaporate in the station as opposed to mopping it, were based on economic and policy considerations, and therefore immune from suit).  As in *Tinsley*, in this case, WMATA employees, when determining the best time to remove the snow and/or ice, are balancing safety concerns against not impeding pedestrian traffic.  *Id*. at 239.  WMATA employees are also considering how often to clean against WMATA's budget.  *Id*. at 240.  Because WMATA's snow and/or ice removal decisions are proper maintenance procedures grounded in concerns of economic and public policy considerations, WMATA has immunity from suit.  *See Smith*, 290 F.3d at 208 (". . . discretionary acts deserving of immunity are not limited to policymaking or planning decisions; day-to-day management can also involve discretionary choices grounded in regulatory policy.")

### IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** WMATA's Motion and **DENIES** Prince George's County's Motion.

April 8, 2016

_____
/s/
Charles B. Day
United States Magistrate Judge

CBD/yv